UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 505 SFD, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>        Defendant. | Case No. 24-cv-01751-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SAC**<br><br>Re: Dkt. No. 71 |

Now before the Court is defendant's motion to dismiss plaintiff's claims for damages, with the exception of the claim for unpaid base rent, from the second amended complaint. The Court held a hearing on October 10, 2025.

**BACKGROUND**

This is the third time that the parties are before this Court on a motion to dismiss. Plaintiff 505 SFD, LLC owns 505 Sir Francis Drake Boulevard, a commercial property in Greenbrae, California. Dkt. No. 68 ("SAC") ¶ 7. First Republic Bank ("the Bank") leased the premises from plaintiff for a term that commenced on January 4, 2023, and was set to terminate on April 30, 2033. *Id.* ¶¶ 8-9. However, on May 1, 2023, the California Department of Financial Protection and Innovation closed the Bank and appointed defendant Federal Deposit Insurance Corporation ("FDIC-R") as receiver. *Id.* ¶ 18. FDIC-R assumed the Bank's responsibilities, including the lease of the premises. *Id.*

On September 1, 2023, plaintiff timely submitted a Proof of Claim to defendant for no less than $1,338,093.49. *Id.* ¶¶ 21-22. On December 4, 2023, defendant mailed a notice of repudiation

of the lease that stated the repudiation was effective December 4, 2023. *Id.* ¶ 27. On January 26, 2024, plaintiff received a Notice of Partial Allowance of Claim from defendant, allowing plaintiff's claim in the amount of $23,000 and disallowing the claim in the amount of $1,315,093.49. *Id.* ¶ 23. In the notice, defendant stated, "<u>Your claim is partially allowed for $23,000 which represents the amount you identified as abated rent for the first calendar month of the lease</u>. The remainder of your claim is disallowed as not proven to the satisfaction of the receiver." *Id.* (emphasis in SAC).

On March 21, 2024, plaintiff filed a complaint in this Court for commercial lease damages under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821. Dkt. No. 1. In the original complaint, plaintiff sought damages and attorney's fees totaling $143,733.20. *Id.* ¶ 28. This figure was comprised of unpaid base rent from September 29 to December 4, 2023 ($50,600.02); unpaid additional rent for property taxes from September 29 to December 4, 2023 ($11,146.68); unpaid additional rent for utilities/landscaping ($2,986.50); abated rent ($69,000.00); and attorney's fees (in excess of $10,000.00). *Id.* ¶¶ 23-27. Plaintiff also requested 10% additional interest per year for all amounts past due. *Id.* at 5.

Defendant moved to dismiss. Dkt. No. 21. Defendant did not dispute that unpaid base rent, property taxes, and utilities/landscaping may be recoverable under FIRREA but moved to dismiss the request for abated rent, attorney's fees, and 10% interest. *Id.* at 5-6. On October 4, 2024, the Court granted in part and denied in part defendant's motion to dismiss. Dkt. No. 30. The Court dismissed the request for abated rent and additional interest without leave to amend, finding that the "rent abatement" was an impermissible penalty under FIRREA, and that sovereign immunity generally bars an award of interest against a federal agency. *Id.* at 7, 9. The Court declined to dismiss the request for attorney's fees at that stage. *Id.* at 8.

On May 16, 2025, with the Court's leave, plaintiff filed a first amended complaint ("FAC"). Dkt. Nos. 53, 54. The FAC alleged a new factual theory, that defendant breached the lease by "repudiating. . ., failing to make a timely repudiation, failing to make payments required by the Lease, and [failing to] restore the condition of the Premises." Dkt. No. 53 ¶ 59. The FAC asserted claims for (1) declaratory relief pursuant to 28 U.S.C. § 2201, that FDIC-R's disallowance of plaintiff's claim was invalid and that the lease is in full force and effect; (2) damages for breach of

2

the lease agreement, for approximately $5,011,978.99; and (3) unlawful takings without just compensation, in violation of the Fifth Amendment.

On July 25, 2025, the Court granted the motion to dismiss the FAC. Dkt. No. 66. The Court found plaintiff did not administratively exhaust the legal theory that the FDIC-R's repudiation was untimely, and so the Court lacked jurisdiction to decide the claims in the FAC which depended on this unexhausted theory. *Id.* at 9. The Court dismissed the first and third claims from the FAC with prejudice and gave plaintiff leave to amend its breach of contract claim. *Id.* at 10. The Court allowed plaintiff "one last opportunity to amend" because "[t]he deficiencies in the amended complaint could possibly be cured through amendment, and defendant does not dispute that *some* amount of damages are at play stemming from the lease repudiation." *Id*. at 9.[1]

On August 8, 2025, plaintiff filed the Second Amended Complaint, alleging damages for monies due and owing under the lease through December 4, 2023, the date the FDIC-R repudiated the lease. Dkt. No. 68 ("SAC"). The SAC seeks damages totaling $1,216,803.56 as follows:

| Description | Amount |
| --- | --- |
| Unpaid Base Rent | $50,600.02 |
| Unpaid Additional Rent (Property Taxes) | $25,594.38 |
| Unpaid Additional Rent (Utilities - Water) | $1,455.42 |
| Unpaid Additional Rent (Utilities - Electric) | $600.00 |
| Unpaid Additional Rent (Insurance) | $1,663.74 |
| Unpaid Additional Rent (Repair and Maintenance - Landscaping) | $3,560.00 |
| Unpaid Additional Rent (Repair and Maintenance - Tenant Repair Work) | $850,000.00 |
| Unpaid Additional Rent (Repair and Maintenance – Fees) | $5,830.00 |
| Unpaid Additional Rent (Repair and Maintenance – Fee) | $2,500.00 |
| Unpaid Additional Rent (Repair and Maintenance – Fee) | $2,500.00 |
| Unpaid Additional Rent (Repair and Maintenance – Tenant Repair Work – | $20,000.00 |

---

[1] The Court's order granting the motion to dismiss the amended complaint is presently on appeal. Dkt. Nos. 72, 73.

| | |
|---|---|
| Parking Lot Repairs) | |
| Unpaid Additional Rent (Repair and Maintenance – Tenant Repair Work) | $229,500.00 |
| The FDIC's partially allowed claim which remains unpaid | $23,000.00 |
| Total | **$1,216,803.56** |

*Id.* ¶ 28. Defendant now moves to dismiss all but the claims for unpaid base rent, pursuant to Rule 12(b)(6).

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether to grant a motion to dismiss, the Court must assume the plaintiff's allegations are true and must draw all reasonable inferences in his favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings. *Id*. at 688-89. The court may also consider "documents attached to the complaint [and] documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

4

# DISCUSSION

The SAC alleges that plaintiff is entitled to "contractual rent" damages under FIRREA, 12 U.S.C. § 1821(e)(4)(B)(i). SAC ¶ 26.[2] At the hearing and in the opposition brief, plaintiff has claimed that certain of the landlord's costs are recoverable as "unpaid rent." The subsection of FIRRA pertaining to "Leases under which the institution is the lessee" reads as follows:

> **(A) In general**
>
> If the conservator or receiver disaffirms or repudiates a lease under which the insured depository institution was the lessee, the conservator or receiver shall not be liable for any damages (other than damages determined pursuant to subparagraph (B)) for the disaffirmance or repudiation of such lease.
>
> **(B) Payments of rent**
>
> Notwithstanding subparagraph (A), the lessor under a lease to which such subparagraph applies shall—
>
> > **(i)** be entitled to the contractual rent accruing before the later of the date--
> >
> > > **(I)** the notice of disaffirmance or repudiation is mailed; or
> > >
> > > **(II)** the disaffirmance or repudiation becomes effective,
> >
> > unless the lessor is in default or breach of the terms of the lease;
> >
> > **(ii)** have no claim for damages under any acceleration clause or other penalty provision in the lease; and
> >
> > **(iii)** have a claim for any unpaid rent, subject to all appropriate offsets and defenses, due as of the date of the appointment which shall be paid in accordance with this subsection and subsection (i).

12 U.S.C. § 1821(e)(4). Courts have "construe[d] subsection (e)(4)(B) to govern the receiver's overall liability for damages when it repudiates a lease." *See First Bank Nat'l Ass'n v. FDIC*, 79 F.3d 362, 367 (3d Cir. 1996) (citations omitted).

Defendant makes three main arguments in support of its motion to dismiss. First, defendant

---

[2] Although the SAC cites only generally to 12 US.C. § 1821, the language quoted is from 12 U.S.C. § 1821(e)(4)(B)(i), governing "contractual rent." *See* SAC ¶ 26.

5

argues that the claim for $1,113,890 for "Repair and Maintenance" does "not constitute 'rent' of any kind that can be recovered under FIRREA." Dkt. No. 71 ("Mot.") at 2. Second, defendant argues that the $29,313.54 claimed for "Property Taxes," "Utilities," and "Insurance" are claims for "unpaid rent" and cannot be recovered here because all of these claimed costs were incurred after May 1, 2023 (the date of appointment of the FDIC-R). *Id.* Third, defendant argues that "the claim for $23,000 for 'FDIC's partially allowed claim which remains unpaid' is duplicative of the Plaintiff's claims for abated rent, which this Court already dismissed with prejudice in its prior Order. (*See* Dkt. 30.)" *Id.*

## I.  Repair and Maintenance

The SAC claims more than $1 million in "Repair and Maintenance" work for the following categories: "Landscaping" ($3,560), "Tenant Repair Work" ($850,000), "Fees" ($5,830), "Fee" ($2,500), "Fee" ($2,500), "Tenant Repair Work – Parking Lot Repairs" ($20,000), and "Tenant Repair Work" ($229,500). SAC ¶ 28. Defendant argues the repair and maintenance costs in the SAC are not recoverable because they are neither "contractual rent" nor "unpaid rent" but "rather, they were fees imposed for early termination which are barred by FIRREA." Mot. at 10. Plaintiff argues that the repair and maintenance costs were pled "as 'unpaid rent' which is recoverable under FIRREA." Dkt. No. 74 ("Opp'n") at 6.

To determine whether this repair and maintenance work is recoverable, the Court must look to the terms of the lease, which plaintiff attaches to the SAC. *See* SAC, Ex. A ("Lease"). The difficulty here is that the lease allocates responsibility for the repair and maintenance work differently depending on the type of work, and the SAC is not sufficiently specific for the Court to determine what types of repair and maintenance costs plaintiff claims.

Both parties cite to § 7.1 of the lease, but each party provides only half the picture. Defendant argues that "Section 7.1 of the Lease provides that the landlord will bear its own cost and expense in repairing and maintaining the premises except for damage caused by the tenant." Mot. at 11. As will be explained below, this is only partially true. Meanwhile, plaintiff alleges, "Under the Lease, including Paragraphs 4.1.2, 7.1, and Articles 7 and 26, of the Lease, Tenant is responsible

6

for payment as Additional Rent, all of Landlord's actual and reasonable out-of-pocket costs incurred in maintaining, repairing and replacing, [sic] the Premises as well as restoring and return the Premises to Landlord in broom clean condition and free of all debris, excepting only ordinary wear and tear . . . ." SAC ¶ 15.

Section 7.1 of the lease states, in full:

> Landlord shall have no obligation to alter, remodel, improve, repair, decorate or paint the Premises, except as expressly specified in this Lease and in <u>Exhibit B</u>. Landlord shall at its own cost and expense (except as otherwise expressly set forth in this Lease) repair and maintain in good condition and in compliance with applicable Regulations, the roof of the Building, exterior walls (including periodic painting, but limited to no more than once every ten (10) years, which limitation shall not apply to painting that is necessary to maintain the exterior walls in good condition in response to specific damage rather than ordinary wear), the foundation of the Building, floor slabs, load-bearing walls, the parking area and driveways serving the Building and the Premises' landscaping (the foregoing, collectively, "Landlord Maintenance Items"); provided, however, Landlord's obligation for parking lot re-striping and painting and slurry sealing shall be limited to once every five (5) years during the Term or as more frequently as may be required by applicable Regulations, and Landlord shall not be obligated to complete any such repairs to the parking lot until the five (5) year anniversary date of the Commencement Date, unless sooner required by applicable Regulations. Notwithstanding the foregoing, Tenant shall be required to reimburse Landlord as additional rent for the costs incurred by Landlord to change any Landlord Maintenance Items to comply with any Regulations to the extent such changes are triggered by the Tenant Improvements or Alterations (including without limitation, any change to the design or configuration of the Premises or access thereto made or requested by Tenant), or as a result of the specific nature of Tenant's business in the Premises (as opposed to general retail or office use). Also notwithstanding the foregoing, subject to the provisions of Article 12, Tenant shall reimburse Landlord for the cost of repairing damage to the Building (including exterior paint) which Landlord is obligated to repair and maintain under this Section 7.1 to the extent caused by the negligent acts or willful misconduct of Tenant or its employees, contractors, licensees, agents or invitees. In addition, subject to the provisions of Article 12, Landlord also agrees to repair any damage to the Premises caused by the active negligence or willful misconduct of Landlord Entities. Tenant shall give Landlord notice of such repairs as may be required to be performed by Landlord under the terms of this Lease, and Landlord shall complete the same with reasonable diligence (but in all events within thirty (30) days after receipt of such notice or, if it reasonably would require more than thirty (30) days to complete the repairs, within a time reasonably necessary to complete such repairs; provided Landlord undertakes to complete such repairs within such thirty (30) day period and diligently pursues such repairs to completion).

7

1 Lease, § 7.1.

2     Section 7.2 provides:

> Except for Landlord's obligations under Section 7.1, above, Tenant shall, at its own cost and expense, keep and maintain all parts of the Premises in good, clean and sanitary condition, promptly making all necessary repairs and replacements, whether structural or non-structural, ordinary or extraordinary, with materials and workmanship of the same character, kind and quality as existed as of the Commencement Date (including, but not limited to, repair and replacement of all fixtures installed by Tenant, water heaters serving the Premises, windows, the painting of interior and exterior walls, the fountain, glass and plate glass, gutters and downspouts, doors (interior and exterior), exterior stairs, skylights, any special office entries, interior walls and finish work, ceilings, floors and floor coverings (above slab), heating and air conditioning systems, electrical systems, fire/life safety systems and plumbing systems) and performance of regular removal of trash and debris. Upon termination of this Lease in any way, Tenant will surrender the Premises to Landlord in good condition and repair, ordinary wear and tear, loss by fire or other casualty, and Landlord's repair and maintenance obligations excepted.

*Id.* § 7.2.

    Section 7.3 provides that the tenant shall, at its own cost and repair, enter into a contract with a maintenance contractor for servicing the heating and air conditioning systems. *Id.* § 7.3.

    Section 4.1.2 of the lease defines "Expenses" to include

> Landlord's actual and reasonable out-of-pocket costs incurred in maintaining, repairing and replacing as reasonably necessary the Premises' landscaping and pressure washing the parking areas. Tenant may elect to contract directly for the provision of landscaping services and pressure washing of the parking areas, in which case these items shall be removed from Expenses.

*Id.* § 4.1.2. Thus, Section 7.1 does not—as the SAC alleges—make the tenant liable to reimburse "*all* of Landlord's actual and reasonable out-of-pocket costs incurred in maintaining, repairing and replacing" the premises. *See* SAC ¶ 15 (emphasis added). But neither does Section 7.1—as defendant alleges—make the landlord liable for maintenance and repair costs excepting damage caused by the tenant. *See* Mot. at 11.

    To summarize, the lease provides that the landlord is responsible for the costs and maintenance of "Landlord Maintenance Items," which include such items as the roof, exterior walls, foundation, floor slabs, parking areas, and driveways. Lease § 7.1. Only if the landlord incurs costs

8

"to change any Landlord Maintenance Items to comply with any Regulations . . . or as a result of the specific nature of Tenant's business in the Premises" shall the Landlord Maintenance Items be chargeable to the tenant. *Id.* The tenant is responsible for the costs and maintenance of such items as water heaters, windows, the fountain, gutters and downspouts, doors, heating and air conditioning systems, interior walls and finish work. *Id.* § 7.2.

The case law makes clear that there is no bright line rule regarding recovery of repair and maintenance costs under FIRREA because whether those costs are recoverable turns on the terms of the specific lease agreement. With regard to "contractual rent," numerous courts have followed the District Court for the District of Columbia in finding that the term "contractual rent" in FIRREA must be "narrowly construed as 'only . . . those sums that are fixed, regular, periodic charges,' . . . expressly delineated in the lease[.]" *See Qi v. FDIC*, 755 F. Supp. 2d 195, 201 (D.D.C. 2010) (quoting *First Bank*, 79 F.3d at 369). With regard to "unpaid rent," "courts look to the lease to determine whether the obligation was 'a duty assumed by the lessee as consideration for the occupation of the leased premises.'" *Winkal Mgmt., LLC v. FDIC*, 288 F. Supp. 3d 33 (D.D.C. 2017) (quoting *Qi*, 755 F. Supp. 2d at 202).

For instance, in *Winkal*, the district court found the landlord was entitled to recover as "unpaid rent" the damages incurred to repair and restore the premises after the tenant had partially demolished it. The court rejected the FDIC's argument that it owed no unpaid rent "due" at the time of appointment as receiver, explaining, "several courts that have delved into the issue have found that repair and maintenance costs qualify as 'unpaid rent' in circumstances where a tenant has assumed the duty to maintain or repair all of the leased premises, or at least the portion of the leased premises at issue." *Id.* at 42-43 (citing *Qi*, 755 F. Supp. 2d at 205; *First Bank*, 79 F.3d at 368).

By contrast, the lease in *Qi* provided that the landlord was to maintain, repair, and replace as necessary the structural portions of the building. 755 F. Supp. 2d at 205. The *Qi* court rejected the landlord's bid to recover the costs incurred to restore the mezzanine that the tenant had demolished because these costs were not properly characterized as "a request to recover back rent." *Id.* The *Qi* court contrasted the facts there with what occurred in *Pioneer Bank*, where the "lessee's assumption of the rehabilitation costs . . . was part of the rent it owed the lessor, and its failure to

pay those costs was recoverable against the receiver as rent due and owing at the time of the receiver's appointment; it was not simply a claim for property damages sustained during the tenancy." *Id.* at 204 (citing *Pioneer Bank & Trust v. Resolution Trust Corp.*, 793 F. Supp. 828 (N.D. Ill. 1992)).

Recently, Judge Tigar of this district granted a motion to dismiss a landlord's claims for demolition and restoration costs as barred by FIRREA. *Noe Valley, LLC v. FDIC*, No. 24-cv-1841-JST, Dkt. No. 33 (N.D. Cal. Nov. 12, 2024). Where the lease required the landlord to demolish improvements prior to the commencement date of the lease, the landlord was not entitled under FIRREA to seek what amounted to "reliance damages" for the demolition work performed. *Id.* at 5. And where the lease did not require the lessee to make any improvements, the landlord could not later recover for the costs it incurred in restoring the premises. *Id.* at 6.

Here, the SAC does not plausibly allege that the "Repair and Maintenance" items are recoverable under FIRREA. Nothing in the lease indicates that repair and maintenance costs were "'fixed, regular, periodic charges,' . . . expressly delineated in the lease[,]" and thus they are not recoverable as "contractual rent" under FIRREA. *See Qi*, 755 F. Supp. 2d at 201. Nor does the SAC plausibly allege these items are recoverable as "unpaid rent": there are insufficient facts to determine whether the repair and maintenance was "a duty assumed by the lessee as consideration for the occupation of the leased premises." *See Qi*, 755 F. Supp. 2d at 202. As described above, the lease allocates different repair obligations to the landlord or tenant depending on the type of work performed, and the SAC states only barebones allegations regarding the repair and maintenance work plaintiff claims. For instance, the SAC asserts the rather staggering sum of $850,000 for "Tenant Repair Work," with no explanation of what this work is. *See* SAC ¶ 28. The same is true for an additional "Tenant Repair Work" charge in the amount of $229,500. *See id.* At the hearing, when repeatedly pressed by the Court, plaintiff's counsel could not articulate *what* work the landlord had performed to incur more than $1 million in repair and maintenance costs. Counsel cited to paragraph 15 of the SAC, which contains only conclusory allegations that the tenant owes plaintiff these costs under the lease. *See id.* ¶ 15. Even at the pleading stage, the Court is not required to accept conclusory allegations as true. *See In re Gilead Scis.*, 536 F.3d at 1055.

The SAC also lacks any specificity as to the timing of the work performed. At the hearing, counsel for plaintiff confirmed that it seeks repair and maintenance costs as "unpaid rent" under FIRREA. Under FIRREA, unpaid rent may be recovered only if "due as of the date of the appointment" of the receiver (here, May 1, 2023). *See* 12 U.S.C. § 1821(e)(4)(B)(iii). The proof of claim plaintiff filed with the FDIC-R shows that at least some of the repair and maintenance costs (i.e., for landscaping) were incurred after May 1, 2023. *See* Dkt. No. 71-1 at 56 (claiming $2,225 for "Cato Landscaping" from 5/1/23 to 9/1/23, and $445 for same dated 10/1/23).[3] Thus, the SAC fails to plausibly allege that any of the repair and maintenance costs were sustained within the timelines allowable to recover "unpaid rent" under FIRREA.

The question, then, is whether plaintiff should receive another bite at the apple. The Court previously cautioned that the second amended complaint would be plaintiff's last chance, Dkt. No. 66 at 9. Despite the September 2023 proof of claim and three complaints filed in this litigation, the bases for plaintiff's claimed damages remain unclear. Coupled with counsel's inability to explain the repair and maintenance costs at oral argument, the Court is left with little confidence that another round of amendment will cure the deficiencies of the complaint. Plaintiff filed this case over a year and a half ago. At this point, plaintiff should have a clear picture of what its damages are and when those damages were incurred. "[T]he Ninth Circuit has recognized that plaintiffs do not enjoy unlimited opportunities to amend their complaints." *Stone v. Conrad Preby's*, No. 12-cv-2031-IEG (BLM), 2013 WL 139939, at *2 (S.D. Cal. Jan. 10, 2013) (citing *McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996)).

The Court will not grant plaintiff another chance to amend the complaint. The "Repair and Maintenance" costs are dismissed from the SAC with prejudice.[4]

---

[3] The Court rejects plaintiff's argument that the Court should not consider the "Proof of Claim" on a motion to dismiss. The Proof of Claim was the subject of the prior motion to dismiss, which centered around whether plaintiff had properly exhausted its claim through the administrative process. *See* Dkt. No. 66. Moreover, the SAC's references to the proof of claim, *see* SAC ¶¶ 22, 28, make this document properly before the Court under the "incorporation by reference" doctrine. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (a document may be incorporated into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim") (quoting *Ritchie*, 342 F.3d at 908).

[4] This dismissal includes the landscaping costs, which the SAC categorizes as "repair and

11

## II. Property Taxes, Utilities, Insurance

Defendant also seeks to dismiss the claims for property taxes, insurance, and utilities from the SAC. Plaintiff asserted these categories of damages previously, *see* Dkt. No. 1 ("Compl.") ¶ 28, Dkt. No. 53 ("Am. Compl.") ¶ 44, and defendant did not dispute in its prior motions to dismiss that these categories of damages are potentially recoverable under FIRREA. *See* Dkt. Nos. 21, 56. Plaintiff argues that defendant should be estopped from moving to dismiss the claims for property taxes, utilities, and insurance at this stage since defendant failed to raise these arguments in its first motion to dismiss. Opp'n at 10. Defendant does not respond to this argument in its reply brief.

On this point, the Court agrees with plaintiff. Absent certain exceptions not applicable here, Federal Rule of Civil Procedure 12(g) provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." *See* Fed. R. Civ. P. 12(g). Moreover, whether the claims for property taxes, utilities, insurance, and landscaping are properly claimed under FIRREA will be more readily resolved on a fuller factual record, with evidence about precisely when the costs were incurred. Accordingly, the Court denies defendant's motion to dismiss the claims for property taxes, utilities, and insurance.

## III. Remaining Damages

Defendant asks the Court to dismiss from the SAC plaintiff's claim for $23,000 for "FDIC's partially allowed claim which remains unpaid." *See* SAC ¶ 28. Based on the allegations of the SAC, this sum represents the amount that the FDIC-R partially allowed: "<u>$23,000 which represents the amount you identified as abated rent for the first calendar month of the lease.</u>" *Id.* ¶ 23. As defendant notes, this Court subsequently ruled in its order on the first motion to dismiss that "[t]he rent abatement provision [in the lease] is . . . a 'penalty provision' designed to penalize the tenant

---

maintenance" costs. *See* SAC ¶ 28. The Court had indicated at the hearing that it was considering allowing the landscaping claim to proceed, but on closer examination of the Proof of Claim the Court is satisfied defendant is correct that the claim for these costs may not be sustained as "unpaid rent" under FIRREA.

for terminating the lease." Dkt. No. 30 at 7. The Court therefore granted the motion to dismiss the claim for abated rent from the complaint "because the relevant portion of FIRREA provides 'no claim for damages under any. . . penalty provision.'" *Id.* (quoting 12 U.S.C. § 1821(e)(4)(B)(ii)). Although this may feel unfair to plaintiff, when the FDIC-R had indicated it would allow one month of abated rent, "courts review FIRREA damages claims de novo." *Winkal*, 288 F. Supp. 3d at 40 (citing *Off. & Prof'l Emps. Int'l Union, Local 2 v. FDIC*, 962 F.2d 63, 65 (D.C. Cir. 1992)); *see also Brady Dev. Co. v. Resol. Tr. Corp.*, 14 F.3d 998, 1003 (4th Cir. 1994) ("If judicial relief is chosen, review is by a *de novo* determination of the claim, not a review of the administrative disallowance of the claim."). For the reasons stated in its prior order, Dkt. No. 30 at 4-7, the Court grants the motion to dismiss the claims for the $23,000 representing abated rent from the SAC, with prejudice.

Finally, defendant does not dispute that "unpaid base rent" ($50,600.02) is a permissible form of damages under FIRREA, and that claim shall remain in the case. *See* Mot. at 2.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the motion to dismiss the SAC. The Court GRANTS the motion to dismiss the claims for "Repair and Maintenance Work" and the claim for $23,000 for "FDIC's partially allowed claim which remains unpaid." These claims are dismissed with prejudice. Further leave to amend shall not be granted. The claims for unpaid base rent, property taxes, utilities, and insurance shall remain in the case at this stage.

The parties previously asked the Court to continue the initial case management conference until 30 days after resolution of the present motion to dismiss. Dkt. Nos. 69, 70. The Court re-sets the initial case management conference to Friday, November 21, 2025, at 2:30 p.m. over Zoom videoconference.

**IT IS SO ORDERED**.

Dated: October 21, 2025

SUSAN ILLSTON
United States District Judge

13